UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DARRYN BRETT SHARBER,                                                              Plaintiff,

v.                                                         Civil Action No. 3:16-cv-P526-DJH

THE CITY OF LOUISVILLE *et al.*,                                                Defendants.

* * * * *

## MEMORANDUM OPINION AND ORDER

Plaintiff Darryn Brett Sharber, a prisoner currently incarcerated at the Little Sandy Correctional Complex, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 (DN 1). Plaintiff's complaint is before the Court for initial review pursuant to 28 U.S.C. § 1915A. For the reasons that follow, a portion of the claims will be dismissed, and the remaining claims will proceed.

### I. SUMMARY OF CLAIMS

The claims in the complaint concern Plaintiff's detention at the Louisville Metro Department of Corrections (LMDC). He brings this action against the following twenty-four Defendants: (1) City of Louisville; (2) LMDC; (3) Louisville/Jefferson Metro Government (Louisville Metro Government); (4) Mayor Greg Fischer; (5) LMDC Director Mark Bolton; (6) LMDC Asst. Director Iryt Troutman; (7) Dr. Robert Rozefort, LMDC/private contractor; (8) LMDC Administration Lt. Roy Christopher; (9) MobileX USA; (10) MobileX USA unknown x-ray technician; (11) Correct Care Services (CCS); (12) CCS LPN Cadie Greene; (13) CCS LPN Kristi Legan; (14) "LMDC's Entire Chain of Command Over the Grievance System"; (15) LMDC grievance counselor Ms. Taylor; (16) LMDC Professional Standards Unit (PSU); (17) LMDC PSU Sgt. Michael Callahan; (18) LMDC Sgt. Phillip Summers; (19) LMDC Ofc. D. Johnson; (20) LMDC Ofc. Leonard Melvin; (21) LMDC Ofc. Laws; (22) LMDC Ofc. Jeremiah

Furman; (23) LMDC Ofc. Wimsatt; and (24) "Numerous Other Individual Supervisors and Officers Serving with the LMDC as well as Related Defendants to be Supplemented when Names are Ascertained" ("Doe" Defendants). Plaintiff sues Defendants in their individual and official capacities.

In the complaint, Plaintiff reports that on April 28, 2016, at the LMDC, he was "brutally and unjustifiably punched, choked, and attacked, and sexually assaulted and harassed by [Defendant] Officer Jeremiah Furman." He claims that Defendant Furman knew there was no video surveillance where he attacked him. Plaintiff reports that for three weeks prior to the assault, Defendant Furman called Plaintiff "offensive sexual and dehumanizing names such as 'Goldilocks' and 'Blondie' and winked at him often."

Additionally, Plaintiff reports that on May 10, 2016, he was placed in a holding cell to wait for a court escort officer to take him to court and that while in the holding cell he was attacked by Defendants Summers, Johnson, and Melvin, while Defendant Laws and "other un-named defendants looked on supportively or, at best impassively." He claims that Defendant Johnson used pepper spray on him and hit him with his knee to the ribs and kidney area and with his fists to his head; that Defendant Summers hit Plaintiff on his side; that Defendant Melvin kicked him; and that Defendant Laws just stood there grinning. He alleges that the attack was in retaliation for Plaintiff's "alleged assault 3rd against and LMDC officer T. Pierce; However once the County Attorney reviewed the video tape evidence and testimony of another officer, it was determined that Plaintiff did not assault C/O Pierce and the charge was amended to harassment under an Alford [] plea." Plaintiff also claims that Defendants "attempted to cover-up their

2

culpability by concealing the facts, fabricating evidence, intimidating, and defaming the Plaintiff."

After the May 10th assault, reports Plaintiff, he was afraid to tell Defendant Nurse Legan the truth about what happened to his ribs because Defendants Summers and Johnson were standing next to him and Defendant Johnson was squeezing his arm. Plaintiff, therefore, states that he told her that he fell on the sink and that she "said 'the sink?'" and ordered an x-ray.

Plaintiff indicates that Defendant Johnson took him back to his dorm and that when Defendant Johnson left, Plaintiff called the Prison Rape Elimination Act (PREA) hotline seeking help and stating, "'Please, send someone up here to help me, the officers hurt me and are going to kill me. They broke my ribs.'" Plaintiff reports calling again for help but alleges that no one ever came.

Plaintiff also reports calling his lawyer who went to the jail to see him. Plaintiff claims that Defendant Summers "was caught eavesdropping outside the lawyers door" by Plaintiff's attorney and that Defendant Summers "eavesdropped on [the attorney's] phone call to his supervisor to report the incident and to get his investigator over to take photos of Plaintiffs injuries." He alleges that this violated his "right to privacy between attorney/client."

Later, reports Plaintiff, Defendant Summers took him to get x-rays performed by Defendant MobileX USA's x-ray technician. Plaintiff reports that when he entered the x-ray room alone, he tried to tell the Defendant x-ray technician what happened but that the Defendant "had no response and continued with the x-ray when Plaintiff told him 'the officers did it to me.'" Then, claims Plaintiff, as he exited the x-ray room, Defendant Summers looked at the images and asked the Defendant x-ray technician "'Are they broke?'" to which the x-ray

technician replied, "'look here and here. Now look to this side and possibly here too.'" Plaintiff claims that the Defendant x-ray technician violated his right to privacy under the Constitution and the Health Insurance Portability and Accountability Act (HIPAA) by discussing the x-rays with Defendant Summers.

Plaintiff alleges that he received one Tylenol and 600 mgs of ibuprofen within the 72 hours following the assault and was not examined by Defendant Dr. Rozefort or any other LMDC medical practitioner. He reports that his x-rays confirmed at least two right rib fractures and "possible multiple left rib fractures" but that they were "indeterminate." He claims that the results should have alerted Defendant Dr. Rozefort to order more x-rays for "a determinate finding," because more fractures, maintains Plaintiff, would have meant more pain. He contends that he "was only prescribed 600 mgs. of Ibuprophen two times per day." He claims that Defendants Dr. Rozefort, CCS, and LMDC "knew the results of Plaintiffs x-rays and disregarded an obvious substantial risk of serious harm that Plaintiff has additional broken ribs."

Next, Plaintiff alleges that on May 17, 2016, at approximately 9:30 pm, Defendant Wimsatt escorted Defendant Nurse Greene while she distributed pill call. He claims that Defendant Wimsatt "grabbed Plaintiffs medicine from the med cart and taunted Plaintiff with his Psych med's and diabetic snack. Also, shouting slurs and obscenities toward him calling him a 'pussy' Check-in, defaming the Plaintiff and threatening to contaminate his food, and threaten to, 'Bring back other officers to come in that cell and beat you down.'" He states that Defendant Nurse Greene was laughing and allowing Defendant Wimsatt access to her medical cart. Plaintiff contends that Defendant Wimsatt's actions were "an intentional infliction of pain and

4

for the sole purpose of causing him extreme emotional distress-outrage" and that Defendants CCS, Nurse Greene, and Wimsatt violation his right to privacy/HIPAA and right to medical care.

Plaintiff reports filing grievances but never receiving a response from Defendant Lt. Christopher or any other staff member, and he reports contacting the PREA hotline but no one came. He claims that Defendant Director Bolton and his staff failed to come to his aid. He states that after four to five weeks he wrote the PSU and asked them why they did not help him or respond to his grievances or PREA calls. Plaintiff alleges that Defendant Sgt. Callahan replied that they never received any grievances from him and that his PREA calls were not PREA related. Plaintiff asserts that he had the right to be protected "by the LMDC chain of command, the Louisville Metro Gov. including it's supervisors and Mark Bolton."

Additionally, Plaintiff claims that the April 28th and May 10th assaults were "also a direct product of certain deficient policies, practices, and customs implemented, maintained, and tolerated by the Louisville Metro Depts. Corrections and 'Metro-Gov' with respect to LMDC tactics, hiring, training, supervising (including but not limited to LMDC'S surveillance polices) and the disciplining of officers." Plaintiff alleges that there was no video surveillance in any holding cells, which was "a decision by Mark Bolton, LMDC Director, NOT to supervise it's employees." He contends that the LMDC maintained "an unsafe and dangerous atmosphere ripe with excessive force amongst LMDC officers, and represent the deliberate indifference of the Louisville Metro Government and their Corrections Department, to the physical safety and Constitutional rights of its inhabitants." He asserts that Defendants Director Bolton, Deputy Director Troutman, Mayor Fischer, "and other un-named officials, supervisory personnel and policy makers of the Metro Government and the LMDC" either had "actual knowledge of,"

5

"acquiesced in and condoned," and/or "were deliberately indifferent to" the deficient policies, practices, and customs at the LMDC.

Plaintiff alleges violations of the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution, violations of HIPAA, and violations of state-law, including assault, battery, negligence, conspiracy, and intentional infliction of mental distress.

As relief, Plaintiff seeks compensatory damages, punitive damages, and "emotional and psychic trauma damages," and the issuance of injunctive relief ordering the administration to follow up on all PREA calls with inmates; to reorganize the grievance system with a new chain of command; and to place cameras in "ALL Hold-Cells."

## II. **STANDARD OF REVIEW**

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although courts are to hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519 (1972), this duty to be less stringent "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require courts "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. ANALYSIS

As a preliminary matter, the Court will discuss the parties. Plaintiff sues Defendants in their individual and official capacities. Individual-capacity "suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.*

Accordingly, the official-capacity claims against Defendants Mayor Fischer, Director Bolton, Assistant Director Troutman, Lt. Christopher, "LMDC's Entire Chain of Command Over the Grievance System," Ms. Taylor, Sgt. Callahan, Sgt. Summers, Ofc. Johnson, Ofc. Melvin, Ofc. Laws, Ofc. Furman, Ofc. Wimsatt, and LMDC Doe Defendants, all of whom are employees of the LMDC/Louisville Metro Government, actually are against the Louisville Metro Government. Additionally, the claims against LMDC and its PSU, which are not entities subject to suit under § 1983, are actually against the Louisville Metro Government as the real party in interest. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint."). The Court construes the claims against the City of Louisville also as being brought against the merged Louisville Metro Government.[1] *See Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 14 (Ky. Ct. App. 2009) (indicating that "Louisville/Jefferson Metro Government is the post-merger successor to the City of Louisville"); *St. Matthews Fire Prot. Dist. v. Aubrey*, 304 S.W.3d 56, 60 (Ky. Ct. App. 2009) (stating that

---

[1] In 2003, the City of Louisville government merged with the surrounding Jefferson County government and formed what is now referred to as the Louisville/Jefferson County Metro Government (Louisville Metro Government). See http://www.louisvilleky.gov. Therefore, the separate governmental entity of the City of Louisville no longer exists.

"Jefferson County and the City of Louisville have merged to form the Louisville Metro Government").

Similarly, the official-capacity claims against the MobileX USA x-ray technician are against his employer, MobileX USA, and the official-capacity claims against CCS Dr. Rozefort and Nurses Greene and Legan are against their employer, CCS.

For this reason, the Court will dismiss the claims against the LMDC, its PSU, and the City of Louisville and the official-capacity claims against all LMDC/Louisville Metro Government Defendants as redundant to and subsumed by the claims against their employer, the Louisville Metro Government. *See Von Herbert v. City of St. Clair Shores*, 61 F. App'x 133, 140 n.4 (6th Cir. 2003) (Krupansky, dissenting) ("Herbert's official-capacity federal claims against [the individual defendants] were redundant, because they were subsumed by her § 1983 charge against the city."); *Smith v. Brevard Cty.*, 461 F. Supp. 2d 1243, 1251 (M.D. Fla. 2006) (dismissing claims against individuals sued in their official capacity as redundant where their employer was also named as a defendant); *Smith v. Bd. of Cty. Comm'rs of Cty. of Lyon*, 216 F. Supp. 2d 1209, 1219-20 (D. Kan. 2002) (dismissing the claim against the sheriff sued only in his official capacity as redundant since the governmental entity of which he was an officer or agent was also a defendant in the action). The Court will also dismiss the official-capacity claims against the MobileX USA and CCS Defendants as redundant to and subsumed by the claims against their employers.

The Court now will turn to the claims alleged by Plaintiff.

### A. Injunctive Relief

An inmate's claim for injunctive relief regarding the conditions of his confinement becomes moot due to his release from confinement or transfer to another facility. *See Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (holding that a prisoner's claims for injunctive relief became moot after he was transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same). Because Plaintiff is no longer incarcerated in LMDC, his claims for injunctive relief are moot and will be dismissed.

### B. Retaliation

Retaliation for the exercise of a constitutional right is itself a violation of the Constitution actionable under § 1983. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id.*

Here, Plaintiff contends that Defendants assaulted him on May 10th in retaliation for his alleged assault on another LMDC officer, not because he was engaged in any protected conduct. Accordingly, Plaintiff fails to state a retaliation claim, and that claim will be dismissed.

### C. Unanswered Grievances

Plaintiff alleges that he filed grievances that went unanswered. Prisoners, however, do not possess a constitutional right to a prison grievance proceeding, *see Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Spencer v. Moore*, 638 F. Supp. 315 (E.D. Mo. 1986); *O'Bryan v. Cty. of Saganaw*, 437 F. Supp. 582, 601 (E.D. Mich. 1977), and state law does not create a liberty

interest in grievance proceedings. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Corn v. Lewis*, No. 92-0098, 1993 WL 210702, at *1 (6th Cir. June 15, 1993); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). Furthermore, if the prison provides a grievance process, violations of its procedures do not rise to the level of a federal constitutional right, *Spencer v. Moore*, 638 F. Supp. at 316, and a plaintiff has no right to an effective grievance procedure. *See Ishaaq v. Compton*, 900 F. Supp. 935, 940-41 (W.D. Tenn. 1995); *Flowers v. Tate*, Nos. 90-3742, 90-3796, 1991 WL 22009 (6th Cir. Feb. 22, 1991). Plaintiff's allegation concerning grievances, therefore, does not give rise to a § 1983 claim, *see Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982), and that claim will be dismissed.

### D. PREA Claims

Plaintiff also alleges that Defendants failed to respond to his PREA calls.

"[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002). Although not addressed by the Sixth Circuit, district courts, including the Western District of Kentucky, have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff. *See Simmons v. Solozano*, No. 3:14CV-P354-H, 2014 WL 4627278, at *4 (W.D. Ky. Sept. 16, 2014); *Montgomery v. Harper*, No. 5:14CV-P38-R, 2014 WL 4104163, at *3 (W.D. Ky. Aug. 19, 2014) ("[T]his Court concludes that the PREA creates no private right of action."); *Chapman v. Willis*, No. 7:12-CV-00389, 2013 WL 2322947, at *4 (W.D. Va. May 28, 2013) ("There is no basis in law for a private cause of action to enforce a PREA violation."); *Holloway v. Dep't of Corr.*, No. 3:11VCV1290 (VLB), 2013 WL 628648, at *2 (D. Conn. Feb.

20, 2013) ("There is nothing in the PREA that suggests that Congress intended it to create a private right of action for inmates to sue prison officials for non-compliance to the Act."); *Faz v. N. Kern State Prison*, No. CV-F-11-0610-LJO-JLT, 2011 WL 4565918, at *5 (E.D. Cal. Sept. 29, 2011) ("[T]he PREA does not create a private right of action . . . ."); *Woodstock v. Golder*, No. 10-CV-00348-ZLW-KLM, 2011 WL 1060566, at * 9 (D. Colo. Feb. 7, 2011) ("PREA provides no private right of action.") (citation omitted). "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. The statute does not grant prisoners any specific rights." *Chinnici v. Edwards*, No. 1:07-cv-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008) (internal citation omitted).

Upon consideration, this Court concludes that the PREA creates no private right of action. Plaintiff's claim under that Act must, therefore, be dismissed.

### E. Disclosure of Medical Information

Plaintiff alleges that his privacy rights were violated when Defendant MobileX USA x-ray technician discussed Plaintiff's x-ray results with Defendant Summers and when Defendant Nurse Greene allowed Defendant Wimsatt around her medical cart.

The Sixth Circuit narrowly applies the right to informational privacy "only to interests that implicate a fundamental liberty interest."[2] *Bloch v. Ribar*, 156 F.3d 673, 684 (6th Cir. 1998). The Sixth Circuit has limited such a violation to only two instances: "(1) where the release of personal information could lead to bodily harm, [citing *Kallstrom v. City of Columbus*,

---

[2] The right to informational privacy arises from the Fourteenth Amendment. *Moore v. Prevo*, 379 F. App'x 425, 428 (6th Cir. 2010) ("[I]nmates have a Fourteenth Amendment privacy interest in guarding against disclosure of sensitive medical information from other inmates subject to legitimate penological interests."). Plaintiff also alleges a violation of the Fourth Amendment with respect to the incidents involving his medical information. However, "[t]he right to nondisclosure of one's medical information emanates from a different source and protects different interests than the right to be free from unreasonable searches and seizures." *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001).

136 F.3d 1055, 1061 (6th Cir. 1998)]; and (2) where the information released was of a 'sexual, personal, and humiliating nature.'" *Townsend v. Reaume*, No. 1:13-cv-729, 2013 WL 3872173, at *4 (W.D. Mich. July 25, 2013) (quoting *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008)). The alleged disclosure of Plaintiff's medical information does not meet either of these circumstances. *See Lee v. City of Columbus*, 636 F.3d 245, 261 (6th Cir. 2011) ("[U]nder our interpretation of privacy rights, we have not yet confronted circumstances involving the disclosure of medical records that, in our view, are tantamount to the breach of a 'fundamental liberty interest' under the Constitution."); *Townsend*, 2013 WL 3872173, at *4 ("[E]ven assuming arguendo that protecting a prisoner's HIV status is a 'fundamental interest,' it does not follow that protection of all medical and/or mental health information rises to the same level."); *cf. Bloch*, 156 F.3d at 687 (holding that the right to informational privacy was triggered by a press conference in which a sheriff released highly personal and extremely humiliating details of the plaintiff's rape). Finding no constitutional violation in the alleged disclosure of Plaintiff's medical information, the Court will dismiss this claim.

Plaintiff also alleges violations of HIPAA. Title II of HIPAA, codified at 42 U.S.C. § 1320a *et seq.*, was created to protect against the unauthorized disclosure of health records and information. *Gratton v. United Parcel Serv., Inc.*, No. 07-3071, 2008 WL 4934056, at *4 (E.D.N.Y. Nov. 14, 2008). However, only the Secretary of the Department of Health and Human Services may file suit to enforce its provisions. 42 U.S.C. § 1320d-5(d); *Sneed v. Pan Am. Hosp.*, 370 F. App'x 47, 50 (11th Cir. 2010). Private citizens have no standing to sue a covered entity for a violation of HIPAA. *Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 139 (8th Cir. 2009) (holding that HIPAA cannot be enforced through either an implied private

right of action or through § 1983); *see also Carpenter v. Phillips*, 419 F. App'x 658, 658 (7th Cir. 2011); *Siegler v. Ohio State Univ.*, No. 2:11-cv-170, 2011 WL 1990570, at *8 (S.D. Ohio May 23, 2011). Plaintiff, therefore, has failed to state a claim upon which relief may be granted under HIPAA, and that claim will be dismissed.

### F. *Eavesdropping on Plaintiff and His Attorney*

Plaintiff alleges that Defendant Summers eavesdropped on Plaintiff and his attorney at the prison. The Court will allow the eavesdropping claim to proceed.

### G. *Fifth Amendment*

Plaintiff also claims that Defendants' actions violated the Fifth Amendment. The Fifth Amendment of the United States Constitution provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V.

Plaintiff fails to explain how the Fifth Amendment applies to his claims. Based on the facts as alleged by Plaintiff, the Court does not find that Plaintiff has a cognizable Fifth Amendment claim against Defendants in this instance. Specifically, the Court notes that to the extent Plaintiff is attempting to rely on the Due Process Clause of the Fifth Amendment, it circumscribes only the actions of the federal government. *See, e.g.*, *Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977). Here, the actions of state officials are at issue. Thus, the Court will dismiss the Fifth Amendment claim.

### H. Eighth and Fourteenth Amendments

Plaintiff alleges that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment and alleges due process violations under the Fourteenth Amendment. Because Plaintiff alleges that he was in a holding cell awaiting court, it appears that he was a pretrial detainee during the complained-of incidents at LMDC. For this reason, the Eighth Amendment's proscription against cruel and unusual punishment does not apply to him. *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) ("[T]he Eighth Amendment's protections apply specifically to post-conviction inmates[.]"). Rather, a pretrial detainee is protected by the Due Process Clause of the Fourteenth Amendment. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001).

#### 1. Deliberate Indifference to a Serious Medical Need

"Under the Fourteenth Amendment Due Process Clause, . . . pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Id.* at 685-86. "To sustain a cause of action under § 1983 for failure to provide medical treatment, plaintiff must establish that the defendants acted with 'deliberate indifference to serious medical needs.'" *Id.* at 686; *see also Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976).

The Fourteenth Amendment "claim has two components, one objective and one subjective." *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001). To satisfy the objective component, "'the inmate [must] show that he is incarcerated under conditions posing a substantial risk of serious harm.'" *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 896 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[T]he evidence need only show that 'the medical need at issue is sufficiently serious.'" *Blackmore*, 390 F.3d at 896 (quoting

*Farmer*, 511 U.S. at 834). To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. *Comstock*, 273 F.3d at 702-03.

As to medical treatment following the May 10th assault, Plaintiff complains that he was not examined by Dr. Rozefort and that Dr. Rozefort should have ordered additional, clearer x-rays. Despite these complaints, Plaintiff acknowledges that x-rays were performed and that medication was prescribed. He fails to show how his desire for an examination and additional x-rays rises to the level of a constitutional claim. To be sure, a patient's disagreement with his physician over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable under § 1983. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 816 n.13 (6th Cir. 1996); *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995). Further, the question of whether diagnostic techniques or other forms of treatment are indicated is a classic example of a matter for medical judgment. At most, a medical decision not to order an x-ray or like measures represents medical malpractice. *Estelle*, 429 U.S. at 107. "[M]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id*. at 106. Plaintiff, therefore, fails to state a claim of deliberate indifference to a serious medical need against Dr. Rozefort.

Plaintiff additionally claims that CCS and LMDC/Louisville Metro Government "knew the results of Plaintiffs x-rays and disregarded an obvious substantial risk of serious harm that Plaintiff has additional broken ribs." This is a conclusory statement devoid of factual support. Further, Plaintiff fails to allege a policy or custom on the part of CCS or the Louisville Metro

16

Government which caused him any harm. *See Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (indicating that to demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy"); *Street v. Corr. Corp. of Am.*, 102 F.3d at 818 ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well."). Consequently, Plaintiff fails to state a claim against CCS and the Louisville Metro Government.

Plaintiff also sues Defendant Nurse Legan. However, Plaintiff alleges no wrongdoing by her and even indicates that she ordered x-rays for him. None of the allegations involving Defendant Nurse Legan constitute deliberate indifference to a serious medical need.

As to the May 17th medical cart incident involving Defendant Wimsatt and Nurse Greene, Plaintiff also fails to state a constitutional claim. While Plaintiff alleges that Defendant Wimsatt grabbed his medication and diabetic snack and that Defendant Nurse Greene allowed Defendant Wimsatt access to her medical cart, Plaintiff fails to allege that he was not given his medication or snack, and even if he had made such an allegation, he fails to allege how this one-time incident harmed him. Additionally, Plaintiff's claims that Defendant Wimsatt shouted slurs and obscenities at him and threatened him do not state a constitutional claim. Although reprehensible and not condoned, verbal abuse, harassment, and threats are insufficient to state a constitutional violation under § 1983. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *see also Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle

17

threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Searcy v. Gardner*, Civil No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials.").

For the foregoing reasons, Plaintiff fails to state a Fourteenth Amendment claim of deliberate indifference to a serious medical need.

### 2. *Claims of Excessive Force and Failure to Protect/Intervene*

The Fourteenth Amendment's Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment. *Lamb v. Telle*, No. 5:12-CV-00070-TBR, 2013 WL 5970422, at *5 (W.D. Ky. Nov. 8, 2013).

Upon consideration, the Court will allow the following claims to proceed beyond initial screening: Plaintiff's April 28, 2016, excessive-force claim against Defendant Furman in his individual capacity; his May 10, 2016, excessive-force, failure-to-protect/intervene, and conspiracy claims against Defendants Summers, Johnson, Melvin, Laws, and Unknown Officers in their individual capacities; and the claims against Defendants Bolton, Troutman, Fischer, and Unknown Supervisors in their individual capacities that they made decisions that allowed for the April and May assaults and against the LMDC/Louisville Metro Government that their policies/customs created an atmosphere allowing for the assaults.

### I. State-Law Claims

The Court will allow the following state-law claims to proceed: the assault and intentional-infliction-of-emotional-distress claims against Defendant Furman arising out of the April 28th assault; the assault, battery, and negligence claims against Defendant Bolton arising

18

out of the April 28th assault; and the assault, battery, negligence, and conspiracy claims against Defendants Summers, Johnson, Melvin, Laws, and Unknown Officers arising out of the May 10th assault.

## IV. ORDER

For the foregoing reasons,

**IT IS ORDERED that the following claims will proceed**: Plaintiff's April 28, 2016, § 1983 excessive-force claim and state-law assault and intentional-infliction-of-emotional-distress claims against Defendant Furman in his individual capacity; the state-law assault, battery, and negligence claims against Defendant Bolton arising out of the April 28th assault; the May 10, 2016, § 1983 excessive-force, failure-to-protect/intervene, and conspiracy claims and state-law assault, battery, negligence, and conspiracy claims against Defendants Summers, Johnson, Melvin, Laws, and Unknown Officers in their individual capacities; the claims against Defendants Bolton, Troutman, Fischer, and Unknown Supervisors in their individual capacities that they made decisions that allowed for the April and May assaults and against the LMDC/ Louisville Metro Government that their policies/customs created an atmosphere allowing for the assaults; and the § 1983 claim against Dr. Summers for eavesdropping on conversations of Plaintiff and his attorney.

In permitting these claims to proceed, the Court passes no judgment on the merits and ultimate outcome of the action. A separate Order will be entered directing service on Defendants and governing the development of the continuing claims.

**IT IS ORDERED** that the claims against the LMDC, its PSU, and the City of Louisville and the official-capacity claims against all LMDC/Louisville Metro Government Defendants are **DISMISSED without prejudice to the continuing claims against Defendant Louisville Metro Government**.

**IT IS ORDERED** that all remaining claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

As all claims against Defendants Dr. Rozefort, Lt. Christopher, MobileX USA and its x-ray technician, CCS, Nurses Greene and Legan, grievance counselor Ms. Taylor, LMDC and its PSU, Sgt. Callahan, Ofc. Wimsatt, and "LMDC's Entire Chain of Command Over the Grievance System" are dismissed, the **Clerk of Court is DIRECTED to terminate** them from this action.

Date:

cc: Plaintiff, *pro se*
    Defendants
    Jefferson County Attorney
4415.005